IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| David Blanch | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-12-1965 |
| | * | |
| Chubb & Son, Inc. | * | |
| | * | |
| | * | |
| | * | |
| | ****** | |

## MEMORANDUM

Now pending before this court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) brought by defendant Chubb & Son, Inc., a division of Federal Insurance Company, a wholly owned subsidiary of The Chubb Corporation ("Chubb"). Plaintiff David Blanch filed a five-count complaint against his former employer, Chubb, in the Circuit Court for Baltimore City, asserting claims for breach of implied contract, abusive discharge, breach of the covenant of good faith and fair dealing, violation of the Maryland Wage Payment and Collection Law, and *quantum meruit*. Chubb removed the case to the United States District Court for the District of Maryland and filed a motion to dismiss all counts. Blanch opposed that motion. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, Chubb's motion to dismiss all claims will be granted, but Blanch will be given time to amend as to Counts One, Four, and Five.

I. **Background**

The suit arises from plaintiff Blanch's termination from his position as an insurance adjuster at Chubb's Baltimore office where he had been employed since November 1999.

(Compl. ¶¶ 4, 7, 11, ECF No. 2.)  During his twelve years of employment, Blanch regularly received above national average performance review scores and "annual incentives, performance bonus(es), and/or profit sharing check(s) earned for services rendered during the previous calendar year."  (*Id.* ¶¶ 8-9.)  According to Blanch's complaint, he earned "incentives, performance bonus(es), and/or profit sharing check(s)" for the year 2010, the calendar year ending prior to his termination.  (*Id.* ¶ 16.)

On February 9, 2011, Blanch was called to a meeting to discuss an on-going company investigation regarding a Chubb preferred services provider.  (*Id.* ¶ 20.)  Blanch "cooperated fully with the investigation" in compliance with Chubb's Code of Business Conduct.  (*Id.* ¶ 22.)  The Code of Business Conduct states, "Chubb strictly prohibits any retaliation against an employee . . . who assists in a company investigation."  (*Id.* ¶¶ 23; Def's Mot. to Dismiss, Ex. 2 at 2, ECF No. 7-2.)

On February 16, 2011, Blanch was terminated without notice "for cause" of an "undisclosed policy violation."  (Compl. ¶ 11.)  According to Blanch, Chubb has failed to pay him "incentives, performance bonus(es), severance packages, and/or profit sharing" earned before his termination.  (*Id.* ¶ 17.)  Blanch "protested Chubb's withholding of his wages by way of email communications and telephone calls."  (*Id.* ¶ 37.)

On or about February 23, 2012, Blanch filed a five-count complaint against Chubb in the Circuit Court for Baltimore City.  (*Id.* at 7.)  On July 2, 2012, Chubb timely removed the case to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1441 asserting diversity jurisdiction.  (Notice of Removal, ECF No. 1.)  On July 9, 2012, Chubb filed a motion to dismiss all five counts.  (Def.'s Mot. to Dismiss, ECF No. 7.)

**II.     Chubb's Motion to Dismiss**

**A. Standard of Review**

Chubb moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a 12(b)(6) motion, the court assumes the facts alleged in the complaint are true and draws all reasonable factual inferences in favor of the nonmoving party. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

> A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that the defendant is liable for the misconduct alleged. . . . Facts pled that are merely consistent with liability are not sufficient. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [similarly] do not suffice, because we are not bound to accept as true a legal conclusion couched as a factual allegation.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) *cert. denied*, 132 S. Ct. 1960 (2012) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

In considering the sufficiency of the claim as stated in the complaint, a court may consider documents referenced in and relied on by the complaint on a 12(b)(6) motion without converting it into a motion for summary judgment. *Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*, 70 F. Supp. 2d 580, 592 n.5 (D. Md. 1998), *aff'd* 198 F.3d 237 (4th Cir. 1999) (unpublished table decision).

**B. Analysis**

Under Maryland law, "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981). In an at-will relationship, an employer may fire an employee "for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair." *Towson Univ. v. Conte*, 862 A.2d 941, 949 (Md. 2004) (citing *Porterfield v. Mascari II, Inc.*, 823 A.2d 590, 602 (Md. 2003); *Suburban Hosp. v. Dwiggins*, 596 A.2d 1069, 1077 (Md. 1991); *Adler*, 432 A.2d at 467). There are certain exceptions, which are discussed below as relevant to Blanch's claims.

**1. Count One—Breach of Implied Contract**

Blanch claims that Chubb's written employee policies constitute an offer in implied contract to "pay incentives, performance bonuses, severance packages, and/or profit sharing annually" and that he accepted Chubb's offer by continuing his employment with Chubb. Blanch also claims that he fulfilled all of his obligations under the implied contract for the year 2010 before his termination and that Chubb, therefore, breached its obligations under the implied contract by failing to pay Blanch "incentives, performance bonus(es), and/or profit sharing check(s)" amounting to more than $65,000 in damages.[1]

In Maryland an at-will employee may maintain an action for breach of an implied employment contract if existing general personnel policies or procedures limit the employer-employee relationship. *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 803-04 (Md. App. 1985); *see also Dahl v. Brunswick*, 356 A.2d 221, 224-25 (Md. 1976) (finding employer's

---

[1] Blanch claims Chubb is obligated to pay "incentives, performance bonus(es), *severance packages*, and/or profit sharing check(s)." (Compl. 2, ¶¶ 15, 17 (emphasis added).) He does not claim to have earned a severance package during the year 2010, however, so the court does not consider that item in Blanch's breach of contract claim.

policies may create contractual obligations when employees start or continue to work for employer with knowledge of policy).  Maryland courts have refused to find employment contracts, however, where an employer's publications contained only general policy statements, *MacGill v. Blue Cross of Md., Inc.*, 551 A.2d 501, 504 (Md. App. 1989), or included an express disclaimer, *Conkwright v. Westinghouse Elec. Corp.*, 739 F. Supp. 1006, 1020 (D. Md. 1990), *aff'd*, 933 F.2d 231 (4th Cir.1991); *see also King v. Marriott Int'l, Inc.,* 520 F. Supp. 2d 748, 753 (D.S.C. 2007), *aff'd*, 267 Fed. App'x 301 (4th Cir. 2008), *cert. denied*, 555 U.S. 1044 (4th Cir. 2008).

To meet the requirements for an implied contract, the benefits promised must be definite, specific, and capable of objective application in discrete cases.  *See MacGill*, 551 A.2d at 503-04.  Maryland courts have found handbook provisions likely enforceable in *Dwiggins*, 596 A.2d at 1075-76 (specific grievance procedure before termination); *Haselrig v. Public Storage, Inc.*, 585 A.2d 294, 302 (Md. App. 1991) ("you will be counseled by your Supervisor and given a reasonable opportunity to improve" before termination); *Staggs*, 486 A.2d at 799, 803 (two counseling sessions prior to termination); *cf. Dahl*, 356 A.2d at 223-24 (general practice of giving two weeks' severance instead of two weeks' notice).  Courts have refused to recognize formation of an implied contract, however, in *Ayers v. ARA Health Svcs., Inc.*, 918 F.Supp. 143, 148 (D. Md. 1995) (policy to "behave in an ethical manner"); *MacGill*, 551 A.2d at 504 (commitment to fill vacancies with most qualified applicant consistent with law, fairness, and affirmative action); and *Conkwright*, 739 F. Supp. at 1021 (fair treatment and equal employment opportunity).

In this case, Blanch does not state specific, concrete terms of Chubb's employment documents that create the implied contract Chubb allegedly violated.  His references to

5

"incentives, performance bonuses, severance packages, and/or profit sharing" do not present sufficiently specific contract terms under which the court can analyze Chubb's alleged breach. Further, Blanch's complaint is not sufficiently particularized to constitute appropriate notice to Chubb of the claims against it.

Even if Blanch's allegations were sufficiently specific to state a claim, the disclaimers in Chubb's employment documents state explicitly that they do not form a binding contract. (Def.'s Mot. to Dismiss Ex. 1 at 2, ECF No. 7-1.)[2] The Maryland Court of Special Appeals has held that an employee cannot justifiably rely upon an employer's policy statement if it expressly disclaims contractual intent, *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786, 794 (Md. App. 1986), but has also warned that a disclaimer provision must be "clear and unequivocal" to effectively disclaim contractual liability, *Elliott v. Bd. of Tr. of Montgomery Cnty. Cmty. Coll.*, 655 A.2d 46, 50 (Md. App. 1995) (quoting *Haselrig*, 585 A.2d at 300.). Whether the employee could have justifiably relied upon the handbook as modifying his employment relationship depends on the position and language of a disclaimer in the employment documents. *Haselrig*, 585 A.2d at 301. The disclaimer's position must indicate that it applies to the employment manual or policies as a whole, and its language must unambiguously disclaim contract liability. *Elliott*, 655 A.2d at 51.

Chubb's policy document entitled "Employment-at-will Statement (Disclaimer)" ("Statement") clearly explains the at-will employment relationship, the non-contractual nature of any employment policies, and the specific process required for making any alteration to the at-will nature of the employment contract. (Def's Mot. to Dismiss, Ex. 1, at 2.) Additionally,

---

[2] The court can rely on the employment documents Chubb submitted to evaluate the disclaimers because those documents were listed in Blanch's complaint. *See Md. Minority Contractor's Ass'n, Inc.*, 70 F. Supp. 2d at 592 n.5.

6

should Blanch argue that this Statement was not readily available to employees, Chubb's Code of Business Conduct, mentioned by Blanch's complaint, also clearly disclaims that the employment relationship between Chubb and its employees in the United States is at-will and states that the "code, like Chubb's policies and procedures generally, . . . is not a contract of employment." (Def's Mot. to Dismiss, Ex. 2, at 3.) Accordingly, this court finds Chubb's disclaimer sufficient to preclude an implied employment contract, at least on the limited facts stated in the present complaint.

**2. Count Two—Abusive Discharge**

Blanch claims his discharge by Chubb "for cause" of an "undisclosed policy violation" was actually in retaliation for his participation in a company investigation. He claims his termination was an abusive discharge because Chubb violated the public policy of the State of Maryland and its own Code of Business Conduct or employment policies that prohibit discharge in retaliation for participation in a company investigation.

As noted above, in Maryland an at-will employment contract may be legally terminated "for any reason by any party." *Adler*, 432 A.2d at 467. The tort of abusive, or wrongful, discharge for a violation of public policy not specifically delineated by the legislature is a narrow exception to this broad principle of the at-will contract and should form the basis for a judicial determination, "if at all, only with the utmost circumspection." *Thompson v. Mem'l Hosp.*, 925 F. Supp. 400, 405 (D. Md. 1996) (quoting *Adler*, 432 A.2d at 472).

To establish a wrongful discharge claim, the plaintiff employee must show that: (1) he was discharged; (2) the basis for his discharge violated a clear mandate of public policy; and (3) there was a nexus between his conduct and the employer's decision to fire him. *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002). Further, a plaintiff must "specifically identify" the

clear mandate of public policy he alleges was violated. *Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 569 (D. Md. 2003) (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002)). A clear mandate of public policy is "a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation." *King v. Marriott Int'l. Inc.*, 866 A.2d 895, 902-03 (Md. 2005) (quoting *Sears, Roebuck & Co. v. Wholey*, 779 A.2d 408, 419 (Md. App. 2001), *aff'd*, 803 A.2d 482 (Md. 2002)). Accordingly, Maryland courts have limited wrongful discharge claims to situations where the employee has been terminated for exercising a specific legal right or duty or for refusing to violate the law or the legal rights of a third party. *Milton v. IIT Research Inst.*, 138 F.3d 519, 522 (4th Cir. 1998) (citing *Thompson*, 925 F. Supp. at 406).

In this case, Blanch identifies no provision of a constitution, statute, or other law establishing a public policy recognized by the State of Maryland and allegedly violated by Chubb. *See King*, 866 A.2d at 903. Even if Chubb did improperly retaliate against Blanch for his participation in the company investigation, Chubb's violation of the provisions of its own Code of Business Conduct does not satisfy the standard required for a finding of abusive discharge because a private company's own employment policies do not constitute a clear mandate of public policy.

   **3. Count Three—Breach of Covenant of Good Faith and Fair Dealing**

Blanch claims Chubb violated the covenant of good faith and fair dealing because it breached the terms of its own employment policies by failing to provide him with notice of any performance deficiencies or conduct concerns prior to terminating his employment.

Maryland courts have declined to infer a requirement of good faith and fair dealing in employment contracts.  *Dwiggins*, 596 A.2d at 1076-77 ("Specific modifications to the at-will relationship should not be an indication that the employer intends to go beyond the specific modifications and add an implied covenant of fair dealing to the at-will relationship.").  Since no covenant of good faith and fair dealing can be implied and none is expressly agreed upon, Blanch's claim of violation of the implied covenant of good faith and fair dealing must fail.

### 4. Count Four—Maryland Wage Payment and Collection Law

Blanch alleges Chubb violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. Title 3 Subtitle 5, because it failed to pay him "all wages due and/or earned" prior to his termination, even though no bona fide dispute existed to allow the withholding of wages and Blanch protested the withholding of his wages.

Section 3-505 of the MWPCL requires employers to pay employees "all wages due for work . . . performed before the termination of employment, on or before the day on which the employee would have been paid had employment not been terminated."  Md. Code Ann., Lab. & Empl. § 3-505; *see also Friolo v. Frankel*, 819 A.2d 354, 362 (Md. 2003).  If an employer violates Section 3-505, an employee may bring an action against the employer to recover an amount not exceeding three times the unpaid wages plus reasonable attorney fees and other costs.  Md. Code Ann., Lab. & Empl. § 3-507.2.

Blanch's claim must be dismissed, however, because he has failed to allege specific facts in his complaint.  *See A Soc'y Without A Name*, 655 F.3d at 346 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, . . . do not suffice.").

5. **Count Five—*Quantum Meruit***

In addition to his other claims, Blanch seeks recovery in *quantum meruit* or under the quasi-contract theory of unjust enrichment. He asserts he rendered valuable services to Chubb with the intention of receiving remuneration for his services, Chubb knew or should have known that Blanch expected remuneration, and Chubb benefited from Blanch's services.

In Maryland, a claim for *quantum meruit*, or unjust enrichment, has three elements. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). The plaintiff must show that: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant appreciated or knew about the benefit; and (3) the defendant accepted the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Id*.

Like Blanch's MWPCL claim, his *quantum meruit* claim as pled must also fail because he does not state any facts on which to base his claim; rather he merely recites elements of the claim and conclusions of law.

### III.   Blanch's Request for Leave to File an Amended Complaint

As to Counts One, Four, and Five, Blanch may be able to state a claim if he can allege specific facts regarding the compensation he earned or was promised but has not received. He will be granted leave, as he requests, to seek to file an amended complaint as to those counts. Counts Two and Three, however, fail as a matter of law, and any proposed amendment would be futile.

**Conclusion**

For the reasons stated above, the defendant's motion to dismiss will be granted, but Blanch will be allowed to file a proposed amended complaint as to Counts One, Four, and Five within 21 days. A separate Order follows.


November  8, 2012                                           /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge